United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOOKER GOLDSBY, ) No. C 05-2556 MJJ (PR)
)
    Petitioner, ) **ORDER DENYING**
) **PETITION FOR A WRIT**
v. ) **OF HABEAS CORPUS**
)
A. KANE, )
)
    Respondent. ) (Docket Nos. 12, 13 & 15)
_____ )

    Petitioner, a California prisoner incarcerated at the California Training Facility Soledad, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision by the Governor of California denying petitioner parole. The Court ordered respondent to show cause why the petition should not be granted, and thereafter denied respondent's motion to dismiss the petition. Respondent has filed an answer, and Petitioner has filed a traverse.

**BACKGROUND**

    In 1984, in Los Angeles County Superior Court, petitioner was convicted of second degree murder with the use of a firearm, for which he was sentenced to a term of seventeen years to life in state prison, including a two-year sentence enhancement for the firearm charge. Petitioner was also convicted of attempted murder, for which he received a sentence to run concurrently to his life-term sentence. On February 26, 2003, the California Board of

Prison Terms ("Board") found petitioner suitable for parole. Then-Governor Gray Davis ("Governor") reversed the Board's decision, and found petitioner unsuitable for parole based on the same factors considered by the Board. Petitioner challenged this decision in habeas petitions filed in all three levels of the California courts. These petitions were denied, in an explained opinion by the superior court, and subsequently in summary opinions by the state appellate and high courts. Petitioner thereafter filed the instant petition claiming that the Governor's decision violates his liberty interest in being released on parole, an interest protected by the federal constitutional right to due process.

## DISCUSSION

### A. Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. "[A] federal habeas court

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct. 969, 975 (2006).

B.   Analysis of Claim

Petitioner claims that the Governor's decision violated his right to due process because the decision was based on the facts of the offense and conduct prior to incarceration and not on "some evidence" that he is not suitable for parole. A decision that an inmate is not suitable for parole satisfies the requirements of due process if "some evidence" supports the decision. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board. See id. Additionally, the evidence underlying the parole denial must have some indicia of reliability. McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Governor's denial of parole, this Court must consider the regulations which guide parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of

danger to society if released from prison." The regulations direct the Governor to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code of Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. 15 Cal. Code of Regs. § 2402(d). These circumstances are meant to serve as "general guidelines," giving the Governor latitude in the weighing of the importance of the combination of factors present in each particular case. Cal. Code of Regs., tit. 15, § 2404(c). Once the prisoner has been found suitable for parole, the regulations set forth a matrix to set a base term. 15 Cal. Code Regs. § 2403(a).[1]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

---

[1] The matrix provides three choices of suggested base terms for several categories of crimes: for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years, to a high of 19, 20 or 21 years, depending on certain facts of the crime. Id. at § 2403. One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See 15 Cal. Code Regs. § 2403(c).

4

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original). In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629 (1988).

Here, the Governor denied parole on the basis of petitioner's commitment offense, his prior criminal and social history, his behavior in prison, a psychological report, petitioner's failure to accept responsibility for the crime, the district attorney's opposition to parole, and petitioner's parole plans.

### 1. Commitment Offense

Under state law, the Governor may consider the gravity of the commitment offense in assessing an inmate's suitability for parole. Cal. Penal Code § 3041(b); 15 Cal. Code Regs, § 2402(c)(1). The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in " a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense." Id.

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the

prisoner is laudable. "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). Moreover, the federal constitutional guarantee of due process does not preclude reliance on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability. Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

In his decision, the Governor recited the facts of petitioner's offense as follows:[2]

> Victims Aaron Pitchford and Ralph Jordan were walking up a hill on January 4, 1984. Mr. Jordan ran ahead and noticed a car stopped in a driveway. Beatrice Foster and Booker Goldsby got out of the car and began to talk to Mr. Pitchford. Mr. Goldsby had earlier given Ms. Foster $150 to purchase cocaine, which she bought from Mr. Pitchford. When they discovered he had sold her soap, the two drove around looking for Mr. Pitchford. As Mr. Jordan approached the group, Ms. Foster said to him, "You get over here too. Get over here and shut up." Mr. Goldsby pointed a gun at Mr. Jordan as he joined his friend.
>
> Mr. Goldsby pointed the gun at Mr. Pitchford and said, "Give me my money." He then pointed the gun at Mr. Jordan, going back and forth three or four times. Mr. Pitchford asked, "Man what are you pulling a gun on me for?" Mr. Goldsby was pointing a gun at Mr. Pitchford when Mr. Jordan heard a shot. Mr. Jordan started to run, and was struck by bullets in the left buttock and right calf. He ran to an apartment complex and hid behind some vehicles. He then saw Ms. Foster and Mr. Goldsby turn the corner in their car and come down the street. The two were looking around but did not see him. Mr. Pitchford, who had been shot several times, died of gunshot wounds to his chest and abdomen.

(Resp. Ex. 4.) According to the probation report, petitioner did not have a significant criminal

---

[2] The Governor's decision derived this factual background from the probation officer's report and the opinion of the California Court of Appeal affirming petitioner's conviction and sentence.

record, but he was on parole at the time of the murder. (Resp. Ex. 5.)

The foregoing facts of the offense provided sufficient evidence that the murder was carried out in an "especially heinous, atrocious or cruel manner" within the meaning of 15 Cal. Code Regs. § 2402(c)(1). To begin with, there were multiple victims: petitioner shot and killed Mr. Pitchford, and he shot and injured Mr. Jordan. Second, the murder was dispassionate and calculated manner insofar as petitioner shot Mr. Pitchford multiple times at close range, shot Mr. Jordan as Mr. Jordan was running away and posed no threat. The evidence also suggested petitioner planned to kill the victims insofar as he and his accomplice drove around Mr. Pitchford, and after Mr. Jordan got away, they drove around looking for him, presumably to kill him also. There was evidence of a callous disregard for human suffering insofar as petitioner created a potential for serious injury or death to persons other than the victim by shooting at the fleeing Mr. Jordan in a public place. Lastly, petitioner's motive – to avenge a failed attempt to purchase $150 worth of drugs -- was very trivial in relation to the offenses of murder and attempted murder. Under these circumstances, there is "some evidence" that the commitment offense met the factors set forth in the state's regulations for indicating that the murder was committed in an "especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.

The Court notes the concern expressed by the Ninth Circuit in Biggs v. Terhune that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d 910, 916 (9th Cir. 2003). More recently, the Ninth Circuit has recently criticized this statement as beyond the scope of the dispute before the court, however: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. In any event, to whatever extent the dicta in Biggs remains in force, the challenged parole denial here took place after petitioner had served 19 years in state prison, which is not sufficiently longer than his minimum term of 17 years to implicate the concerns raised in Biggs. See, e.g., Irons, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison, which was less than the minimum term). More importantly, this case does not raise the concerns addressed in Biggs because, as

7

discussed below, there was evidence that petitioner was unsuitable for parole for additional reasons besides the circumstances of the offense and petitioner's pre-offense behavior.

### 2. Additional Factors

There was sufficient evidence in support of other statutory factors indicating unsuitability for parole besides the circumstances of his conviction offense.

Petitioner had a history of drug and alcohol abuse, had fathered 12 children by four different women, had a previous arrest for burglary, robbery and drug possession, and the circumstances of the offense indicated that he was still involved in illegal drug activity despite his placement in a drug diversion program at the time. (See Resp. Ex. 4 at 3-4; Ex. 5 at 6-7; Ex. 6 at 3-4.) This constituted "some evidence" that petitioner had an unstable social history, that his criminal behavior was escalating and rehabilitation would not work. See 15 Cal. Code Regs. §§ 2402(c)(3) & (d)(2),(6).

In addition, while in prison, petitioner had received eight disciplinary reports between 1985 and 1993, two of which sere serious, including possession of an inmate-manufactured stabbing weapon. (See Resp. Ex. 4 at 3; Ex. 6; see 15 Cal. Code Regs. §§ 2402(c)(6) & (d)(9).) There was also a psychological report indicating that petitioner had not come to terms with the magnitude of the crimes he had committed; petitioner's continued claim that he acted in self-defense was evidence that he had not fully accepted responsibility for the crimes; and the district attorney opposed to the grant of parole. (Resp. Ex. 4 at 3-4; Ex. 7; see 15 Cal. Code Regs. § 2402(d)(3)).

Under the circumstances, there was "some evidence" that Petitioner was unsuitable for parole under the factors set forth in California's statutes and regulations for determining parole suitability. Consequently, the Governor's decision did not violate Petitioner's right to due process, and the state court opinions upholding the Governor's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Further, the Governor's decision was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of Petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(2).

C. Judicial Notice

Petitioner has requested that the Court take "judicial notice" of letters from various

individuals supporting petitioner's release on parole and parole plans. These letters are not suitable for judicial notice under Federal Rule of Evidence 201. In addition, the letters post-date the 2003 parole decisions by the Board and Governor at issue in the present petition. Because they were not part of the evidence before the Board and Governor, they are not relevant to the question of whether the Governor's decision to deny parole in 2003 was supported by "some evidence." Petitioner asserts that these letters simply repeat the same information that was in earlier letters that *were* before the Board and Governor in 2003. The Court assumes for purposes of this discussion that similar letters regarding petitioner's post-parole employment and residence plans were before the Governor and the Board. However, for the reasons discussed above, there was ample evidence of other factors indicating petitioner's parole unsuitability, irrespective from whether petitioner had adequate parole plans. As a result, the letters submitted by petitioner do not alter the conclusion that the Governor's denial of parole did not violate petitioner's right to due process insofar as the decision was supported by sufficient evidence of petitioner's parole unsuitability.

//

//

**CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is DENIED.

The Clerk shall close the file and terminate any pending motions.

IT IS SO ORDERED.

DATED: 3/4/2008

_____
MARTIN J. JENKINS
United States District Judge